**AFFIDAVIT**

I, KAREN COTTRELL, being duly sworn, depose and state as follows:

**INTRODUCTION**

1.  I, Karen Cottrell, am a Special Agent of the Department of the Treasury, Office of Inspector General, Office of Investigations, assigned to the Washington D.C. Field Office, and have been a Special Agent for approximately 5 years. Prior to becoming a Special Agent, I served as an Inspector with the U.S. Customs Service for more than four years. I am a graduate of the Basic Criminal Investigator and Inspector General Training Programs at the Federal Law Enforcement Training Center in Brunswick, Georgia. I have also completed the Inspector General Academy training course on Public Corruption. My training and experience have included public corruption and white-collar fraud investigations. As a federal agent, I am authorized to investigate violations of the laws of the United States and execute warrants issued under the authority of the United States.

2.  The facts and information contained in this affidavit are based upon my knowledge and observations, information received from other individuals including cooperating witnesses, and other law enforcement officers (including Mike Uebel, Lead Investigator, United States Bureau of Printing and Engraving, and Special Agent Sean E. Hubbard with the Department of Treasury, Office of Inspector General, Office of Investigations), and information gained from my training and experience. This affidavit does not set forth all information known to the Office of Inspector General or the Federal Bureau of Investigation about this case and is being submitted solely for the purpose of providing sufficient information to establish probable cause for the search of the vehicle identified in Attachment A and the locker identified in Attachment B.

3. This affidavit contains information necessary to support an application for a search warrant to search David C. Faison's black 2002 Chevrolet Trailblazer registered with Maryland license plate 523M059 including the passenger compartment, all storage areas, all compartments and all other areas located in the vehicle (as more fully described in Attachment A), and to search David C. Faison's employee locker and all contents of the locker located in Room 410A at Bureau of Engraving and Printing Annex Building, 14th and C Streets, SW, Washington D.C. 20228 (as more fully described in Attachment B).

4. The items to be seized pursuant to this warrant are described in Attachment "C" to this warrant, which is herein incorporated by reference.

5. Based upon the investigation described below, I submit that the facts set forth in this affidavit establish that there is probable cause to believe that evidence, contraband, fruits and instrumentalities of violations of 18 U.S.C. § 641 (theft of government property) are presently located within David C. Faison's black 2002 Chevrolet Trailblazer registered with Maryland license plate 523M059 (as more fully described in Attachment A), and David C. Faison's employee locker located in Room 410A at Bureau of Engraving and Printing Annex Building, 14th and C Streets, SW, Washington D.C. 20228 (as more fully described in Attachment B).

### STATEMENT OF FACTS SUPPORTING PROBABLE CAUSE

<u>Background information on the Bureau of Engraving and Printing and David C. Faison</u>

6. The Bureau of Engraving and Printing ("BEP") is the bureau of the United States Department of the Treasury that manufactures currency and other securities of the United States, including Federal Reserve Notes (FRN). The BEP is located at Bureau of

Engraving and Printing Annex Building, 14th and C Streets, SW, Washington D.C. 20228.

7.  David C. Faison ("Faison") is employed by the BEP as a Stock Control Recorder. As a Stock Control Recorder, Faison is responsible for distributing currency paper stock throughout the BEP, which allows him regular access to Plate Printing Section 2 within the BEP, where sheets of $100 FRNs ("$100 bills") are produced. It is common for BEP employees like Faison to utilize unique BEP issued gloves to perform their duties. These BEP issued gloves are made of a white cloth material with what appears to be a "rubberized" gray material affixed to the palmside of the gloves which covers the sides and fronts of the fingers to make handling currency easier. The gloves have a black manufacturer's emblem on the back of the glove, and dark colored piping around the opening of the gloves. David Faison utilizes locker #16 located in Room 410A at the Bureau of Engraving and Printing Annex Building, 14th and C Streets, SW, Washington D.C. 20228 (as more fully described in Attachment B)

8.  During the process of manufacturing $100 bills, Plate Printing Section 2 processes sheets of currency paper which each contain 32 uncut, partially printed $100 bills. At this stage of the manufacturing process, the 32 partially printed uncut $100 bills on each sheet of currency paper appear to be completed $100 bills with the exception that the bills do not yet have serial numbers or Treasury Seals stamped upon them. The bills do contain plate numbers and note position indicators.

Evidence of Theft of Nine Sheets of Partially Printed $100 bills

9.      During the investigation, the Office of Inspector General for the Department of the Treasury was provided with 145 partially printed $100 bills, which did not have serials numbers or Treasury Seals on them but did contain plate numbers and note position indicators, that had been passed between on or about May 29, 2006, and July 27, 2006 at the following casinos: Midway Slots (Harrington, DE), Dover Downs Slots (Dover, DE), Bally's (Atlantic City, NJ), Trump Plaza (Atlantic City, NJ), Delaware Park (Wilmington, DE), and Charles Town Races and Slots (Charles Town, WV).

10.     During the investigation BEP Lead Investigator Mike Uebel examined the 145 partially printed $100 bills which had been passed at the aforementioned casinos. Based upon his examination of the $100 bills and his training and experience, Investigator Uebel determined that the 145 notes were cut from nine sheets of $100 bills that had been processed in Plate Printing Section 2 within the BEP. Investigator Uebel based this determination upon his analysis of the front and back plate number and the note position indicator which appeared on each of the partially printed $100 bills that he examined. Investigator Uebel observed that the $100 bills he examined were not machine cut, and appeared to be cut with scissors. Based upon this evidence, there is probable cause to believe that nine sheets of partially printed $100 bills were stolen from the BEP in or about the period May through July 2006.

11.     Because each uncut sheet of $100 bills at BEP contains 32 $100 bills, Investigator Uebel reported that a theft of nine sheets of uncut partially printed bills from BEP would mean that 288 partially printed $100 bills with a face value of approximately $28,800 had been stolen. At present, investigation has revealed that only 145 of the 288

$100 bills that would have been contained on the nine sheets of $100 bills printed at BEP have been passed and recovered.

Evidence of Faison's Involvement in Theft of Nine Sheets of Partially Printed $100 Bills

12. On July 8, 2006, Midway Slots determined that slot machine #2-58 had received four $100 bills with no serial numbers. Midway Slots personnel reviewed the slot machine records for periods when $100 bills were inserted into machine #2-58 and discovered that at 8:09 p.m., three $100 bills were inserted within 19 seconds. At 8:10 p.m., slot machine #2-58 issued a cash ticket in the amount of $290 to the person playing the machine at that time. Dave Zerbe, a Surveillance Manager for Midway Slots, retrieved surveillance video for slot machine #2-58 which covered the time period during which the three $100 bills were inserted into the machine. I have reviewed this surveillance video. The surveillance video shows Faison sitting at slot machine #2-58. Faison is wearing what appeared to be BEP issued gloves. Faison redeemed the $290 cash ticket printed by slot machine #2-58 at a ticket redemption machine.

13. On July 19, 2006, Midway Slots determined that slot machines #2-022 and #2-052 had received in total nine $100 bills which did not contain serial numbers. Midway Slots retrieved the surveillance video for slot machines #2-022 and #2-052 for the period during which the machines received $100 bills on July 19, 2006. The surveillance video reflects that from on or about 3:16 p.m. to on or about 4:37 p.m. on July 19, 2006, Faison was at slot machine #2-022. The event records for slot machine #2-022 reflect that during the period Faison was at the machine, five $100 bills were inserted into the machine. The surveillance video reflects that from on or about 4:41 p.m. to on or about 5:05 p..m. on July 19, 2006, Faison was at slot machine #2-052. The event records for slot machine #2-052

reflect that during the period Faison was at slot machine #2-052, four $100 bills were inserted into the machine.

14. On July 27, 2006, agents of OIG conducted surveillance of Faison's residence located at 10700 Tatum Court in Largo, Maryland. OIG agents observed Faison leave his residence at 10700 Tatum Court wearing a brown hat, an orange polo shirt, cargo shorts, and sandals. Faison entered his black Chevrolet Trailblazer with Maryland license plate 523M059 and departed. At on or about 5:13 p.m. on July 29, 2006, the Dover Downs Slots surveillance system captured video footage of Faison wearing the same clothing agents had observed him wearing as he left his residence. Dover Downs Slots surveillance video for July 27, 2006, captured footage of Faison inserting an $100 bill with no serial numbers and no Treasury Seal into a slot machine. Dover Downs security later verified that four $100 bills with no serial numbers or Treasury Seals were inserted into the slot machine that Faison had used on July 27, 2006. Surveillance video reflects that Faison departed Dover Downs in a black Chevrolet Trailblazer.

15. Investigator Uebel reviewed the four $100 bills with no serial numbers or Treasury seals that were recovered from the Dover Downs slot machine that Faison had used on July 27, 2006. Investigator Uebel confirmed that the four $100 bills came from one of the nine sheets that are believed to have been stolen from the BEP

16. On July 31, 2006, trash from the curb outside of Faison's residence at 10700 Tatum Court in Largo, Maryland was collected and searched. During the search, two scraps of what appeared to be BEP currency paper were found in the trash. Investigator Uebel examined the scraps of paper retrieved during the search and confirmed that the scraps of paper were scraps of specialized currency paper utilized during the BEP currency production

6

process. Crane & Company, Dalton, Massachusetts, is the only authorized manufacturer of currency paper for Federal Reserve Notes. This paper is unique in that it has: (1) registration marks on the border of the sheets of 32 notes; (2) red and blue fibers embedded within the paper; and (3) the consistency of the paper is unlike other paper. This currency paper is not sold to the general public.

17.    Based on my training and experience, it is common for persons who have stolen property to keep such property and instrumentalities of their crime in their vehicles and in storage areas such as lockers.

Based upon the foregoing information and upon my knowledge, training and experience, your affiant believe that fruits and evidence of the commission of a criminal offense as described in Attachment C, will be found at the premises listed and described below in Attachment A and Attachment B, and therefore a search warrant should be issued.

Wherefore, your affiant believes based on the information provided that probable cause exists for search, and seizure warrants to be issued for the above identified and described locations and assets, for evidence of violations of 18 U.S.C. § 641 (Theft of Government Property).

The statements above are true and accurate to the best of my knowledge and belief.

_____
Karen Cottrell
Special Agent, Department of Treasury, Office of Inspector General, Office of Investigations

Sworn to before me this \_\_\_\_\_ day of August 2006.

_____

Honorable Alan Kay

United States Magistrate Judge

District of Columbia